IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 10-121-2 |
| LAMONT PAIGE | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                **March 9, 2022**

Defendant, Lamont Paige moves for compassionate release from his 280-month prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Given that Paige fails to make the showing required to obtain relief under the statute, his motion shall be denied.

**BACKGROUND**

On March 4, 2010, Paige and a co-defendant were charged by an Indictment with the armed robbery of the Trumark Financial Credit Union in Jenkintown, PA on January 20, 2010. Indictment, 1, ECF No. 10. In the course of the robbery, Paige and his co-defendant threatened the Credit Union's employees with a handgun, ordering several of them to their knees. Although they wore masks during the robbery, they were photographed unmasked by bank and nearby cameras both before and after the robbery, and they were later identified by several witnesses and others who knew them. In addition, a dye pack which had been concealed in the stolen money detonated while the defendants were escaping, resulting in their having to abandon the robbery proceeds. Paige, who had been holding the money when the dye pack exploded, was forced to throw off several articles of clothing while he fled. These were later tested and found to contain Paige's DNA, and a pair of shoes confiscated from his abandoned apartment were found to contain

residue of the red dye.  Gov't's Trial Mem. 1-2, ECF No. 46.  Paige was arrested on March 24, 2010 and following a four-day jury trial in September, 2016, he was convicted.  His motions for judgment of acquittal and for new trial were denied on March 22, 2011, and the case proceeded to sentencing the same day.  At sentencing, Paige was designated a career offender and was sentenced to 280 months' imprisonment to be followed by five years' supervised release, restitution in the amount of $40 and a $100 special assessment.  Paige's judgment of conviction and sentence were affirmed on appeal, and his later-filed § 2255 motion was also denied, as was his request for issuance of a Certificate of Appealability.

Paige initiated the instant motion for compassionate release by filing a series of letters addressed to the Court on April 12, 2021, June 11, 2021 and July 9, 2021.  In those letters, Paige claims his health is in jeopardy from the COVID-19 pandemic because of his underlying medical problems, and his career offender sentence is no longer appropriate as a result of the Supreme Court's decision in *United States v. Mathis*, 579 U.S. 500 (2016).  The Government contests Paige's claims.  It asserts the medical conditions from which Paige suffers do not place him in any of the "high risk" categories were he to contract COVID-19 and in any event, he has been fully vaccinated with the Moderna COVID-19 vaccine.  The Government further argues Paige's objection to the length of his sentence is not properly raised at this time.

**LEGAL STANDARDS**

As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed." *Dillon v. U.S.,* 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).  There are, however, a few, very limited exceptions to this general principle, one of which is outlined in § 3582(c)(1)(A) and allows courts to grant early "compassionate release" to inmates where "extraordinary and compelling" reasons warrant such relief.  The statute reads, in relevant part:

**(c) Modification of an imposed term of imprisonment. –** The court may not modify a term of imprisonment once it has been imposed except that –

**(1)** in any case –

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

**(i)** extraordinary and compelling reasons warrant such a reduction; or

**(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

The applicable § 3553(a) factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," … "the need for the sentence imposed to reflect the seriousness of the offense, …. to promote respect for the law, … to provide just punishment for the offense[,] … to afford adequate deterrence to criminal conduct[,] [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A) – (C).

3

The Sentencing Commission has yet to update its Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A) since passage of the First Step Act, which amended § 3582(c)(1)(A) to permit individual defendants to bring compassionate release motions on their own behalf.  On its face, the Policy Statement set forth at U.S.S.G. § 1B1.13[1], is limited to compassionate release motions initiated by the Bureau of Prisons.  Hence the Policy Statement is not binding on district courts considering defendant-initiated compassionate release motions, and courts are free to consider other reasons a defendant raises that are not specifically contemplated in the Policy Statement in determining whether extraordinary and compelling reasons exist.  *United States v. Andrews*, 12 F. 4th 255, 260 (3d Cir. 2021).  The Policy Statement, however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore continues to provide guidance in deciding § 3582(c)(1)(A) motions.  *Id.*  District courts

---

[1] The U.S.S.G. § 1B1.13 Policy Statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent that they are applicable, the court determines that –
>
> **(1)(A)**  Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)**  The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)**  The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)**  The reduction is consistent with this policy statement.

are vested with discretion in their weighing of the § 3553(a) factors and determining motions for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Commentary to the Policy Statement provides that extraordinary and compelling reasons may exist where the defendant is either suffering from a terminal illness, or is suffering from another condition - a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process - "which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(B). Additionally, extraordinary and compelling reasons may exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," *id.* cmt. n.1(B), or where the caregiver of a defendant's minor children dies or becomes incapacitated, or a defendant's spouse or registered partner for whom the defendant would be the only caregiver becomes incapacitated, *id.,* cmt. n.1(C). Finally, the Policy Statement also contains a catchall provision giving "the Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-397 (E.D. Pa. 2020)(quoting U.S.S.G. § 1B1.13 cmt. n.1(D)). Under the Policy Statement, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13 cmt. n.3. The defendant bears the burden of proof by a preponderance of the evidence on motions for compassionate release. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi,* 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

Paige submitted a compassionate release request to the Warden of his institution, FCI Berlin, in September 2020 without specifying a medical condition, and the request was denied. Further, more than thirty days have elapsed between the Defendant's submission to the Warden and his first letter to the Court seeking release under § 3582(c)(1)(A), and the Government agrees Paige has satisfied the administrative exhaustion requirement set forth in the statute.

It is thus incumbent upon the Court to determine whether extraordinary and compelling reasons exist to warrant granting Paige compassionate release. In evaluating the circumstances present in this case, the Court first takes judicial notice that since March 2020, when it was first declared a pandemic, COVID-19 has sickened millions of people throughout the world. Here in the United States, there have been more than 78 million cases of COVID-19, resulting in more than 945,000 deaths to date. Despite more than 81% of people age five and over having received at least one dose of a COVID-19 vaccine, transmission in many communities, including Coos County, New Hampshire where Paige is located, remains high. www.covid.cdc.gov/covid-data-tracker/#datatracker-home. While the COVID-19 vaccines are effective at preventing most infections, they are not 100% effective. However, clinical trials and observational studies show that all COVID-19 vaccines authorized in the United States are effective at preventing COVID-19, especially severe disease, hospitalization, and death. www.cdc.gov/covid-data-tracker/#vaccine-effectiveness.

"COVID-19 poses a unique challenge to the prison system." *United States v. Nunez,* 483 F. Supp. 3d 280, 283 (E.D. Pa. 2020). In response to the pandemic, the federal Bureau of Prisons has modified operations within its facilities to mitigate the risk and spread of COVID-19. Mitigation measures include suspending or otherwise limiting visits as to format, duration,

frequency, and number of visitors; mandating testing and masking of all inmates, staff, and visitors; restricting inmate movement within institutions to maximize social distancing; and mandating daily cleaning of all areas, supplies and equipment. In addition, frequent symptom and temperature checks of inmates and staff are conducted, and all new inmates are quarantined for 14 days following their arrival and are not released into the general population until they have also had a negative COVID test. www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp. The operational status of each institution is determined based on a number of health indicators, including the level of transmission within the institution and in the surrounding community. Although mitigation measures have been in place throughout the pandemic, the particular interventions in place at a given institution vary based on the institution's operational status. www.bop.gov/coronavirus/covid19_status.jsp.

Paige is serving his sentence at FCI Berlin, which is located in northern New Hampshire. FCI Berlin has a total population of 719 male inmates and its current operational status is at level 3, which is the most restrictive operations level requiring enhanced and frequent cleaning of all areas, masking of all inmates and staff, and daily symptom checks of any and all inmates and staff leaving and re-entering the facility. Normal operations and all visiting have been suspended until further notice. Since the inception of the pandemic at FCI Berlin, there have been no inmate or staff deaths to date; 484 inmates and 80 staff have tested positive but all have recovered from COVID-19. www.bop.gov/locations/institutions/sch/. Thus far, 175 staff members and 577 inmates at FCI Berlin have been fully vaccinated. www.bop.gov/coronavirus.

According to the CDC, there are a number of medical conditions which put people at greater risk of adverse outcomes from COVID-19. These include: cancer; chronic kidney, liver and lung diseases; diabetes; heart conditions like heart failure, coronary artery disease,

7

cardiomyopathies, and "possibly hypertension," "immune-compromised state/weakened immune system," and obesity.  www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  The most recent medical records provided for Paige indicate his current diagnoses include chronic lower back and right shoulder pain, hyperlipidemia (high cholesterol), and gastrointestinal problems including reflux, colic and indigestion, all of which are being treated in the prison health unit.  There is nothing in Paige's medical history to suggest he suffers from any condition which places him at high risk of an adverse outcome from COVID-19.  Exh. A to Gov't' s Resp. to Def.'s Mot. for Comp. Rel., ECF No. 159.

Moreover, Paige's records also reflect that he tested positive for COVID-19 in April 2021 and he fully recovered in less than two weeks, during which he was largely asymptomatic.  In addition, he received the requisite two doses of the Moderna COVID-19 vaccine on May 19 and June 16, 2021.  *Id.*  The Court therefore finds that Paige's medical conditions do not constitute extraordinary and compelling circumstances such as would warrant granting him compassionate release.

Turning to the applicable § 3553(a) factors, the Court also finds these considerations do not support release.  Paige's crime was very serious.  He and his co-defendant threatened a number of innocent credit union employees with physical injury or death using a handgun.  At the time Paige committed this offense, he was 37 years old and already had a long criminal record that included several prior state convictions for low-level drug trafficking.  In sentencing Paige, the Court took these factors into account and determined that 280 months was needed to reflect the seriousness of his offense, to promote respect for the law, to provide just punishment and deter Paige from committing criminal acts in the future, and to protect the public.  18 U.S.C. § 3553(a)(1), (2)(A) – (C).  Thus far, Paige has served just over half of his sentence.  He has exhibited

good conduct in prison and states he has rehabilitated himself by taking advantage of prison programming and finding and practicing his faith.  Paige states he wishes to spend time with his family, open a barber shop and mentor young people upon his release.  While these developments are commendable, rehabilitation does not, in and of itself, constitute an extraordinary and compelling reason for compassionate release.  The Court finds the objectives behind Paige's sentence remain best fulfilled by the completion of that sentence.

As an additional basis for release, Paige also contends that under the Supreme Court's 2016 decision in *Mathis v. United States*, 579 U.S. 500 (2016), he would no longer qualify as a career offender for sentencing purposes.  More particularly, Paige asserts that, in light of *Mathis*, one of the prior drug convictions "should no longer qualify as an enhancement."  Def.'s 4/12/21 Letter Mot. for Comp. Rel., ECF No. 153.  No further argument or explanation as to Paige's reasoning is given.

In  *Mathis*, the Supreme Court held that a defendant's prior state burglary conviction did not qualify as a predicate violent felony under the Armed Career Criminal Act, 18 U.S.C. §924(e)(1) ("ACCA") because the state burglary statute was broader than generic burglary - it enumerated various alternative factual means of satisfying the location element, beyond those included in the generic offense.  Paige was classified as a career offender under U.S.S.G. § 4B1.1(a)[2] based on two prior state court felony drug convictions that were found to be convictions for a "controlled substance offense" within the meaning of the Guideline.  On direct appeal of his

---

[2]  U.S.S.G. § 4B1.1(a) reads:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2)  the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

sentence, Paige argued he was improperly sentenced as a career offender because he did not have two qualifying prior convictions. The Third Circuit rejected this argument and found Paige was properly sentenced because he committed drug trafficking offenses on two separate occasions, albeit only fourteen days apart, for which he was separately charged and sentenced in state court. Paige provides no explanation as to why either of the drug trafficking convictions used to designate him a career offender would not qualify as a felony conviction of a controlled substance offense under the approach taken in *Mathis*. Since *United States v. Andrews* makes clear that "the duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance," Paige's argument holds no sway. 12 F.4th 260-261.

Nor is this the proper vehicle for Paige to use to challenge his sentence. The Third Circuit, among others, has held that "motions pursuant to § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences." *Okereke v. United States,* 307 F.2d 117, 120 (3d Cir. 2002). A motion for compassionate release is not the appropriate vehicle for raising such a challenge. *See: United States v. Millhouse,* Nos. 20-3632, 21-1078, 2022 U.S. App. LEXIS 3530, at *4, n.5 (3d Cir. Feb. 9, 2022) ("To the extent that Millhouse was challenging his conviction based on *Johnson,* a motion for compassionate release is not the proper avenue to have raised such a challenge"); *United States v. Musgraves*, 840 F. App'x 11, 13 (7th Cir. 2021) (Compassionate release is a mechanism for inmates to seek a sentence reduction for compelling reasons, not for remedying potential errors in a conviction.") ; *United States v. Albanese*, Crim. A. No. 97-359, 2021 U.S. Dist. LEXIS 109596, *7-*8 (E.D. Pa. June 11, 2021) ("Convictions and sentences can be challenged on direct appeal or in the habeas forum, but not in a compassionate release motion under 18 U.S.C. § 3582 (c)(1)(A)."). Paige's compassionate release motion therefore fails in all respects and is denied in its entirety for all of the preceding reasons.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez

_____
Juan R. Sánchez,              C.J.